**In the Matter of William SAMS, Debtor.**

**George W. LEDFORD, Chapter 13 Trustee, Plaintiff,**

**v.**

**John TIEDGE, Timothy Kelhoffer, William Sams, Ernest Hase, Nancy Hase, Gary Haines and Pat Meyers, Defendants.**

**Bankruptcy No. 3–88–04283.
Adv. No. 3–89–0038.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Aug. 30, 1989.

George W. Ledford, Trustee, Englewood, Ohio.

John E. Breidenbach, Dayton, Ohio, for trustee, George W. Ledford.

William H. Wolff, Sr., Dayton, Ohio, for Pat Meyers and Gary Haines.

David P. Strub, Dayton, Ohio, for debtor.

John Tiedge, Dayton, Ohio, pro se and for Timothy Kelhoffer.

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order Of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)—matters concerning the administration of the estate (C)—counterclaims by the estate against persons filing claims against the estate and (O)—proceedings affecting the adjustment of the debtor-creditor relationship.

## PROCEDURAL AND FACTUAL BACKGROUND

The pleadings and admissions in this proceeding establish a number of material facts, not in dispute among the parties. These undisputed material facts are summarized by the court in the following paragraph.

William Sams, the debtor, filed a petition under Chapter 13 of the Bankruptcy Code on December 27, 1988 and listed real estate located at 1013·Lea Avenue, (the property) in his schedules. Prior to the filing of the debtor's petition, the defendant, Timothy Kelhoffer, through his counsel, the defendant John Tiedge, obtained a judgment in the amount of thirty-nine thousand, one hundred fifty-three dollars ($39,153.00) against the debtor. The debtor listed the defendant Timothy Kelhoffer and Kelhoffer's attorney, John Tiedge, in the schedules filed with the bankruptcy petition. Prior to the filing this Chapter 13 case, defendant Tiedge had commenced on behalf of his client, defendant Kelhoffer, a State Court collection action against the debtor to foreclose a judgment lien in favor of the defendant Kelhoffer against the debtor's property. On November 21, 1988, Tiedge filed a Praecipe in the State Court forclosure action for the execution and sale of the debtor's property. The Sheriff of Montgomery County held a public auction on February 3, 1989 and the debtor's real estate was sold to the defendant, Ernest Hase and Nancy Hase, for approximately sixty-four thousand, five hundred dollars ($64,500.00). It is undisputed that the defendants, Kelhoffer and Tiedge, had actual notice of the filing of the debtor's Chapter 13 Petition prior to the date of the proposed sale of the debtor's property. The defendants admitted such in their pleadings and on January 31, 1989 filed an Objection To Confirmation Of Plan (Doc. 10, Case No. 3–88–04283).

George W. Ledford, the Chapter 13 Trustee filed a Complaint on February 9, 1989 against Tiedge, Kelhoffer, the debtor, Ernest and Nancy Hase, the purchasers of the real estate, the Sheriff of Montgomery County and the Clerk of the Montgomery County Court of Common Pleas. The trustee's complaint requested that the sale of the debtor's property be avoided pursuant to 11 U.S.C. § 549(a), that the State Court records be purged of the sale of the subject real estate and that sanctions for

violation of the automatic stay be imposed against the defendants Tiedge and Kelhoffer for the sale price of the real estate—sixty four thousand, five hundred dollars ($64,500.00). The debtor filed an answer to the trustee's complaint and a cross-claim against the defendants Kelhoffer and Tiedge and demanded, in addition to the relief sought by the Trustee for violation of the automatic stay, that the debt due the defendant Kelhoffer be discharged and that punitive damages and attorney fees be assessed against defendants Tiedge and Kelhoffer (Doc. 9).

A number of the causes of action asserted by the trustee and the debtor have been concluded. The court has avoided the sale of the debtor's real estate (Doc. 22) and excused several of the defendants from further participation in this proceeding (Doc. 30) pending the resolution of the trustee's and the debtor's causes of action against the defendants Kelhoffer and Tiedge.

Defendants Kelhoffer and Tiedge filed answers to the complaint and the cross-claim (Docs. 13 and 14). On April 12, 1989, Defendants Tiedge and Kelhoffer filed a Motion To Dismiss On Behalf Of John Tiedge And Timothy Kelhoffer (Doc. 18). Counsel for the trustee filed a Memorandum Of Chapter 13 Trustee/Plaintiff Contra Motion To Dismiss On Behalf Of Defendants, John Tiedge and Timothy Kelhoffer (Doc. 20). Debtor then filed a Memorandum Of Defendant, William Sams, Contra To Motion To Dismiss On Behalf Of Defendants, John Tiedge and Timothy Kelhoffer; Motion To Strike Motion To Dismiss (Doc. 23). Defendant Tiedge then filed Response To Trustee's Memorandum Contra; Motion For Summary Judgment On Behalf Of John Tiedge And Timothy Kelhoffer (Doc. 26). The debtor filed a request that the court overrule the Defendants' Motion For Summary Judgment (Doc. 28). The trustee filed a Memorandum Of Chapter 13 Trustee/Plaintiff Contra Motion For Summary Judgment On Behalf Of Tiedge And Timothy Kelhoffer (Doc. 29).

## ARGUMENTS OF THE PARTIES

The defendants' contention in support of both of their motions is that the automatic stay (11 U.S.C. § 362(a)) does not impose any affirmative duty on creditors to halt or reverse the consequences of any pending collection actions that were instituted prior to the filing of the bankruptcy petition. The defendants argue that any such actions are the responsibility of the debtor or the Chapter 13 Trustee. The defendants further argue that the automatic stay requires that creditors refrain from taking any action, which would include action to prevent the continuation of any pending collection actions that were instituted prior to the filing of the bankruptcy petition. In the context of this adversary proceeding, the defendants argue that, as a matter of law, the automatic stay prevented them from halting the State Court foreclosure sale of the debtor's property.

The defendants further argue that the debtor's property was in the "constructive possession" of the sheriff of Montgomery County and that the sheriff "acted pursuant to the order of the Common Pleas Court, and not the Order of the defendants" (Doc. 18).

The Trustee in contrast, contends that "once Tiedge, as Kelhoffer's attorney, became aware of the pendency of the debtor's Chapter 13 Petition, there devolved upon Tiedge and Kelhoffer an affirmative legal obligation to take necessary and appropriate steps to withdraw, cancel and dissolve the praecipe for the sheriff's sale and to restore the status quo" (Doc. 20). Similarly, the debtor contends that the defendants failure to prevent the sale they had initiated and facilitated by allowing it to continue to sale is tantamount to a willful violation of the Automatic Stay. The debtor argues that "despite receiving actual notice of the filing [of the Chapter 13 Petition] and filing an Objection To Confirmation, Tiedge and Kelhoffer allowed a chain of events they created to travel to the obvious logical conclusion while denying any wrong-doing, and shifting the blame for the sale to the Sheriff and Clerk for obey-

ing the praecipe they filed." (Docs. 23 and 28).

## QUESTIONS PRESENTED

The defendants filed two motions in this case, a Motion To Dismiss (Doc. 18) followed by a Motion For Summary Judgment (Doc. 26), presenting the following issues: (1) Do the trustee's complaint (Doc. 1) and the debtor's cross-claim (Doc. 9) state causes of action against the defendants for violations of the provisions of 11 U.S.C. § 362(a)?

(2) If the trustee's complaint and the debtor's cross claim do state causes of action against the defendants for violations of the provisions of 11 U.S.C. § 362(a), are the defendants entitled to summary judgment in their favor on the basis of the undisputed material facts in this proceeding?

(3) If the defendants are not entitled to summary judgment in their favor, can partial summary judgment be entered in favor of the trustee and the debtor on the basis of the undisputed material facts in this proceeding?

## DECISION

■ Pursuant to F.R.Civ.P. 12(b)(6), which is made applicable to this proceeding by Bankr.R. 7012(b), a motion to dismiss a complaint may be filed for "failure to state a claim upon which relief can be granted." A motion to dismiss is an attack upon the legal sufficiency of the complaint and the court is restricted to the pleadings. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir.1983). The general rule is "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Davis H. Elliot Co., Inc. v. Caribbean Utilities Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir.1975). Courts generally disfavor granting a motion to dismiss "[b]ecause dismissal of an action consti-

tutes a judgment on the merits and is accorded preclusive effect." *Matter of Schwartzman*, 63 B.R. 348, 355 (Bankr.S. D.Ohio 1986).

■ Although the defendants' Motion To Dismiss could be dismissed as untimely because Rule 7012 contemplates that such motions will be filed before a responsive pleading, and, in this proceeding, the defendants answered both the complaint and the cross-claim before filing their Motion To Dismiss, the more significant basis for denying the motion is that the trustee's complaint and the debtor's cross-claim do state legally cognizable claims.

■ The complaint and the cross-claim allege that the defendants, with actual knowledge of the filing of this bankruptcy, failed to prevent, and thereby continued to completion, a State Court foreclosure proceeding they had initiated prior to the filing of this bankruptcy petition, but which remained uncompleted at the time the bankruptcy was filed. The complaint and cross-claim further allege that as a result of the continuation of this foreclosure action against the debtor and property of the bankruptcy estate, the defendants caused the real estate to be sold and the debtor and the bankruptcy estate to suffer a loss and incur fees and expenses in violation of the protection provided by the provisions of 11 U.S.C. § 362(a). (Trustee Complaint Doc. 1, ¶ 3, 4, 5, 6, 7, 8, 9, 15, 16, 17 and 18; debtor's cross-claim Doc. 9, ¶ 2, 3, 4, 5, 6, 7, 11, 12 and 13) These allegations are sufficient to withstand the defendants' Motion To Dismiss.

■ Bankruptcy Rule 7012, which incorporates F.R.Civ.P. 7012(b) contemplates that when matters outside the pleadings are presented by the parties and not excluded by the court, the motion to dismiss can, in appropriate circumstances, be treated as a motion for summary judgment. *Matter of Lorandos*, 58 B.R. 519, 520 (Bankr.S.D.Ohio 1986). An examination of the pleadings and filings in this proceeding has not revealed any material facts in dispute among the parties. Although the parties disagree on the legal consequences

arising from these facts, there is no genuine issue as to any material fact that would prevent the entry of summary judgment. The parties have consistently treated the issues presented for decision as matters that do not require the resolution of disputed facts, but rather, issues that are capable of resolution as a matter of law. The court agrees with the parties' position and will determine the issues under the summary judgment rule (Bankr.R. 7056).

■ The filing of a petition in bankruptcy automatically activates a number of Bankruptcy Code provisions. Among the more significant are the creation of the bankruptcy estate (§ 541) and the imposition of the automatic stay (§ 362). The bankruptcy estate is composed of all legal and equitable interests of the debtor wherever located and by whomever held. 11 U.S.C. § 541(a). When a petition is filed under Chapter 13 of the Code, the estate created includes not only all legal and equitable interest pursuant to § 541, but also all property which the debtor may acquire after the commencement of the case but before the closing, dismissal or conversion of the case. 11 U.S.C. § 1306(a).

A filing of a bankruptcy petition also results in the imposition of an automatic stay (§ 362(a)) which halts any pending activity to obtain control or possession of the debtor's property without first obtaining an order of the Bankruptcy Court granting relief from the automatic stay. (§ 362(d). Specifically, 11 U.S.C. § 362(a) states:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title … operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

As the Court of Appeals for the Sixth Circuit stated,

Under section 362(a) of the Bankruptcy Code, the filing of a petition creates a broad automatic stay protecting the property of the debtor. This provision "has been described as 'one of the fundamental debtor protections provided by the bankruptcy laws.'" *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 54 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977)). The automatic stay extends to virtually all formal and informal actions against property of the bankruptcy estate. *It is intended to "stop[ ] all collection efforts, all harassment, and all foreclosure actions."* S.Rep. No. 989, 95th Cong., 2d Sess. 54, *reprinted* in 1978 U.S.Code Cong. & Admin. News 5787, 5840. The automatic stay "is effective upon the date of the filing of the petition … and formal service of process will not be required." 2 Collier on Bankruptcy ¶ 362.03 (15th ed. 1988) (footnotes omitted). Actions taken in violation of the automatic stay generally are void, even if the creditor had no notice of the stay. *See*, e.g., *In re Clark*, 60 B.R. 13, 14 (Bankr.N.D.Ohio 1986) (Creditor "had not known of Debtor's filing at the time of repossession but … it was, nonetheless, required to return the vehicle to Debtor."); *In re Advent Corp.*, 24 B.R. 612 (Bankr. 1st Cir. 1982) (acts in violation of automatic stay are void regardless of lack of knowledge); Collier, *supra*, ¶ 362.03 ("In general, actions taken in violation of the stay will be void even where there was no actual notice of the existence of the stay.") (emphasis added).

*In re Smith*, 876 F.2d 524, 525–26 (6th Cir.1989).

In the case at bar, although the defendants commenced their foreclosure action in state court before the debtor filed his petition, at the time this bankruptcy petition was filed, the foreclosure action was not concluded. *In re Glenn*, 760 F.2d 1428 (6th Cir.1985). The defendants admit hav-

ing actual notice of the bankruptcy filing prior to the Sheriff's sale on February 3, 1989. The record in the bankruptcy case establishes that on January 31, 1989 they filed an objection to the confirmation of the debtor's plan.

The defendants argue that although they had actual knowledge of the automatic stay, they had no duty to prevent the sale of the debtor's real estate. They further argue that taking action to stop the sale would have constituted a violation of the automatic stay. The defendants' arguments strain the boundaries of logic and the limits of advocacy. Such a position cannot be accepted by this court, as it has not been accepted by a majority of other bankruptcy courts, particularly the bankruptcy courts of this district. Judge Cole, of this district, characterized a similar argument as "patently absurd". *In re Dungey*, 99 B.R. 814, 817 (Bankr.S.D.Ohio 1989).

The language of § 362(a)(1) prohibits unequivocally the "commencement or continuation" of all creditor efforts to collect on a debt. As Judge Perlman of this district stated with respect to this language in *In re Mitchell*, 66 B.R. 73, 75 (Bankr.S.D.Ohio 1986),

We simply do not see how it is possible to avoid the application of the plain language of the foregoing [362(a)(1)] which enjoins "the ... continuation ... of a judicial ... proceeding against the debtor." If one is enjoined from continuing a judicial proceeding against the debtor, one is obliged to discontinue it. It seems to us the question presented to us is as simple as that. The statute is plain and unambiguous, and where that is the case it is not necessary to resort to aids for its construction.

*Accord, Smith* at 526; *Dungey* at 817; *In re Holman*, 92 B.R. 764, 768 (Bankr.S.D. Ohio 1988); *Matter of Clark*, 60 B.R. 13, 14 (Bankr.N.D.Ohio 1986).

Based on this language of 362(a)(1) many courts have emphasized the obligation incumbent upon creditors to take the necessary steps to halt or reverse any pending State Court actions or other collection efforts commenced prior to the filing of a bankruptcy petition, including garnishment of wages, repossession of an automobile, foreclosure of a mortgage or a judgment lien and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the bankruptcy petition. *Dungey* at 817; *Holman* at 769; *Clark* at 14; *Mitchell* at 75; *In re Stephen W. Grosse, P.C.*, 84 B.R. 377, 384 (Bankr.E.D.Pa.1988); *In re Outlaw*, 66 B.R. 413, 417 (Bankr.E.D. N.C.1986); *In re Carlsen*, 63 B.R. 706, 710 (Bankr.C.D.Cal.1986); *In re Clark*, 49 B.R. 704, 707 (Bankr.D.Guam 1985); *In re O'Connor*, 42 B.R. 390, 392 (Bankr.E.D. Ark.1984); *In re Gibson*, 16 B.R. 682, 684 (Bankr.S.D.Ohio 1981); *In re Baum*, 15 B.R. 538, 541 (Bankr.E.D.Va.1981); *In re Elder*, 12 B.R. 491, 494 (Bankr.M.D.Ga. 1981).

This responsibility is placed on the creditor and not on the debtor or the trustee as the defendants suggest because "[t]o place the onus on the debtor, ... to take affirmative legal steps to recover property seized in violation of the stay would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the contemplated breathing spell from his creditors illusory". *In re Miller*, 22 B.R. 479, 481 (D.Md.1982). Further, it would result in a significant waste of judicial resources and "the automatic stay at 11 U.S.C. § 362 would be frustrated if the debtor had to involve the court in each situation as here. It would continuously involve the court in pointless and needless litigation. In the facts of the case it should not be the court that should stop the snowball." *Elder* at 494.

The court in *Miller*, at 481 notes,

The courts have been quick to realize that creditor inaction can often be as disruptive to the debtor as affirmative collection efforts. e.g. *In re Elder*, 12 B.R. 491, 494 (Bankr.M.D.Ga.1981) ("No action is unacceptable; no action is action to thwart the effectiveness of the automatic stay.") In recognition of this problem, creditors have been required, when necessary, to take affirmative steps to

restore the status quo at the time of the filing of the petition for relief.

The court finds the defendants argument that the Sheriff had "constructive possession" of the property and acted pursuant to the order of the Common Pleas Court and not the order of the defendants unavailing. The provisions of the automatic stay place the responsibility to discontinue any pending collection proceedings squarely on the shoulders of the creditor who initiated the action. The *Elder* court aptly stated that the "[c]reditor sets in motion the process. The creditor is in the driver's seat and very much controls what is done thereafter if it chooses. If the "continuation" is to be stayed, it cannot choose to do nothing and pass the buck to the garnishee or the court in which the garnishment is filed to effectuate the stay. Positive action on the part of the creditor is necessary so that "continuation" is stayed." *Elder* at 494.

Consistent with the persuasive authority developed in the decisions of the Bankruptcy Courts of this district and other authority, the defendants' Motion For Summary Judgment is DENIED.

As this decision makes clear, not only have the defendants failed to sustain their required burden so that summary judgment cannot be rendered in their favor, to the contrary, it is appropriate to enter partial summary judgment against the defendants.

 Federal Courts have long recognized that if there is no genuine issue as to any material fact the court may enter summary judgment, *sua sponte.* There is no requirement that there be a cross-motion or other pending motion seeking such summary judgment. As the court noted in *Buckel v. Prentice*, 410 F.Supp. 1243, 1247 (S.D. Ohio 1976), *aff'd per curiam* 572 F.2d 141 (6th Cir.1978),

The Court, then, while in agreement with plaintiffs that there is no genuine issue as to any material fact herein, does not agree that plaintiffs are entitled to judgment as a matter of law. On the contrary, the Court concludes that on the facts present the defendants are entitled to judgment. The fact that defendants have not filed a cross-motion for summary judgment does not preclude entry of such a judgment if they are otherwise entitled thereto (citations omitted).

*Accord, In re O'Malley*, 90 B.R. 417, 422 (Bankr.D.Minn.1988); *In re Marvin Properties, Inc.*, 76 B.R. 150, 152 (9th Cir. BAP 1987). Additionally, the United States Supreme Court has recently reaffirmed this authority. The Supreme Court stated in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986),

Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence. *See* [*Catrett v. Johns Mansville Sales Corp.*,] 244 U.S.App.D.C. [160], at 167–168, 756 F.2d [181], at 189 [(1985)] (Bork, J., dissenting); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2720, pp. 28–29 (1983).

This court recognizes that the entry of summary judgment in the absence of any cross-motion or other pending motion seeking summary judgment should be exercised with great caution. The entry of summary judgment is always subject to the requirements of due process concerning notice and an opportunity to be heard, the opportunity for discovery and the exercise of the court's discretion concerning the full presentation of evidence. *Matter of Warner*, 65 B.R. 512, 517 (Bankr.S.D.Ohio 1986).

In this proceeding, the parties, particularly the defendants, have consistently argued that certain preliminary issues are matters of law that are appropriate for summary judgment. The defendants have specifically stated the following: "There does not appear to be any dispute regarding the material facts in this case." "There being no genuine issue regarding any material fact, this case is appropriate for summary disposition." (Motion For Summary Judgment On Behalf Of John Tiedge And Timothy Kelhoffer–Doc. 26).

The partial resolution of this proceeding is consistent with the United States Su-

preme Court's recognition of the purposes of the summary judgment rule: "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." (footnote omitted) *Celotex*, 106 S.Ct. at 2553.

Accordingly, partial summary judgment is GRANTED on the trustee's Complaint (Doc. 1) and partial summary judgment is GRANTED on the debtor's cross-claim (Doc. 9) in that it is determined that John Tiedge and Timothy Kelhoffer have violated the provisions of 11 U.S.C. § 362(a).

There are other issues in connection with the violation of the automatic stay which are not properly resolved by summary judgment. Accordingly, a separate order has been entered scheduling a pretrial conference to consider the remaining issues in this proceeding.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.