**In re Marshall BRISKEY, Debtor.**

**No. 01–239–WRS.**

United States Bankruptcy Court,
M.D. Alabama.

Feb. 5, 2001.

---

Charles M. Ingrum, Opelika, Alabama, for debtor.

Curtis C. Reding, Montgomery, Alabama, Chapter 13 Trustee.

### ORDER DENYING MOTION TO RELEASE GARNISHMENT AND DENYING MOTION FOR EXTENSION OF TIME TO BEGIN MAKING PAYMENTS UNDER CHAPTER 13 PLAN

WILLIAM R. SAWYER, Chief Judge.

This Chapter 13 case is before the Court upon two separate motions filed the Debtor: (1) Motion for Release of Garnishment (Doc. 7); and (2) the Debtor's Motion to

Extend Time to Begin Chapter 13 Payments. (Doc. 9). For the reasons set forth below, both motions are DENIED.

## I. FACTS

On December 22, 2000, the State of Alabama, Department of Revenue issued garnishment process against the Debtor's earnings with his employer.[1] On January 12, 2001, the Debtor filed a petition pursuant to Chapter 13 of the Bankruptcy Code in this Court. The Debtor filed Schedules of his assets and liabilities and a Statement of Financial Affairs with his petition together with a matrix. The Schedules did not list the Debtor's indebtedness to the State of Alabama and the Statement of Financial Affairs did not report that any wages had been seized.[2] In addition, the Alabama Department of Revenue is not listed on the mailing matrix which was filed with the petition and other papers. Shortly after a bankruptcy case is filed, a notice of commencement of the case is sent to all creditors. Needless to say, a creditor who is not listed on the matrix does not receive notice of the commencement of a bankruptcy case from the Court. *See Mitchell Construction Co., Inc. v. Smith (In re Smith)*, 180 B.R. 311, 313 n. 5 (Bankr.N.D.Ga.1995) (describing mechanics of filing schedules and the mailing matrix at the beginning of a Chapter 13 case).

On January 22, 2001, the Debtor filed the two motions described above together with amended schedules and an Amended Chapter 13 Plan. When a debtor amends his schedules, he is required to give notice to any entity affected by the amendment. FED.R.BANKR.P. 1009(a). The Debtor filed Certificates of Service which reflect that motions were served upon the State of Alabama, however, it does not appear that the amended schedules were served as required by Rule 1009(a). The record does not reflect that the Debtor made any attempt to put the State of Alabama on notice of his bankruptcy filing prior to January 22, 2001, when he filed and served the two motions in question.

## A. MOTION TO RELEASE GARNISHMENT

■ The filing of the Chapter 13 petition in this case gave rise, by operation of law, to an automatic stay which stays almost all actions to collect preexisting indebtedness, including garnishment proceedings. 11 U.S.C. § 362(a).[3] It is not necessary that the Debtor or the Court take any affirmative action, such as entering a specific order, to give rise to the automatic stay as the filing of the petition gives rise to the automatic stay. The automatic stay is intended to stop virtually all collection efforts and it is intended to operate automatically. Which, not coincidentally, is why it is called the automatic stay. The automatic stay is "one of the fundamental debtor protections provided by bankruptcy laws." *Midlantic National Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 503, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 54 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5840; H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6296). The provisions of this section execute by operation of law. Actions taken in violation of the automatic stay are void ab initio. *In re Albany Partners*, 749 F.2d 670, 675 (11th Cir.1984); *Borg–Warner Ac-*

---

1. The Debtor did not provide copies of the process but instead described the process in his motion. Whether the process in question is in fact a garnishment, a levy or an attachment cannot be determined with any degree of precision. For the purposes of this decision, the Court will accept the Debtor's characterization of the process.

2. The Debtor's liability for taxes owing to the State of Alabama should have been listed on Schedule E and the garnishment should have been reported in the answer to Question 4b on the Statement of Financial Affairs.

3. 11 U.S.C. § 362(a) provides, in part, that "a petition filed under section 301 ... operates as a stay, applicable to all entities."

*ceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th Cir.1982). The automatic stay is necessary to permit the debtor breathing space so that he may reorganize his affairs, free from the harassment of wage garnishments, foreclosure proceedings and repossessions. The scope of the automatic stay is necessarily broad so that debtors may reorganize their affairs in an orderly and equitable fashion.

 In a garnishment proceeding, no amounts should be seized or withheld from the Debtor's wages after the filing of a bankruptcy petition. It is clear beyond all doubt that garnishing creditors are required to take all necessary action to release their garnishments in order to implement the automatic stay, upon receiving notice of a bankruptcy filing. This is true even if the garnishment process became effective prior to the date of the bankruptcy filing and did not, at the time it first became effective, violate the automatic stay. Indeed, the creditor must not only cease from taking any affirmative action which would violate the automatic stay, it must also take all necessary affirmative action to stop proceedings which are in violation of the automatic stay. *See In re Johnson,* 253 B.R. 857, 861 (Bankr. S.D.Ohio 2000) (actual damages in the amount of $6,669.00, damages for emotional distress in the amount of $1,000.00 and punitive damages in the amount of $1,000.00 imposed jointly against creditor and creditor's lawyer who failed to take affirmative steps to release a garnishment); *In re Banks,* 253 B.R. 25 (Bankr. E.D.Mich.2000) (ignorance of law no excuse; real estate company who failed to vacate a writ of restitution and stop eviction after receipt of notice of bankruptcy filing held liable for damages); *In re Manuel,* 212 B.R. 517, 518 (Bankr.E.D.Va.1997) (creditor and its lawyer who refused to take affirmative steps to release a garnishment after receipt of notice of bankruptcy filing required to pay debtor's attorney fees); *In re Mims,* 209 B.R. 746, 748 (Bankr.M.D.Fla.1997) (creditor under af-firmative duty to release garnishment); *In re Timbs,* 178 B.R. 989, 996 (Bankr. E.D.Tenn.1994) (punitive damages in the amount of $5,000 imposed against lawyer who failed to take affirmative steps to vacate garnishment proceeding after receipt of notice of bankruptcy filing); *Ledford v. Tiedge (In re Sams),* 106 B.R. 485, 490 (Bankr.S.D.Ohio 1989) (rejected creditor's argument as absurd that they did not have affirmative duty to vacate process); *In re Dungey,* 99 B.R. 814, 816–17 (Bankr. S.D.Ohio 1989) (creditor under affirmative duty to release garnishment, damages and attorney's fees awarded to debtor); *Mitchell v. Quality Plant Service, Inc. (In re Mitchell),* 66 B.R. 73, 75 (Bankr.S.D.Ohio 1986) (rejected creditor's contention that it did not have an affirmative duty to stop garnishment which was effective prior to petition and awarded attorney's fees to debtor); *In re Pody,* 42 B.R. 570, 574 (Bankr.N.D.Ala.1984) (creditor who would not release garnishment after receipt of notice of bankruptcy filing was in violation of automatic stay and held liable for damages and attorney's fees); *Elder v. City of Thomasville, Georgia (In re Elder),* 12 B.R. 491, 494 (Bankr.M.D.Ga.1981) (creditor under affirmative duty to stop 'downhill snowballing of a continuing garnishment').

 The Debtor's resort to a "Motion for Release of Garnishment" in the first instance, without making an attempt to resolve the matter without the Court's intervention is inappropriate for at least four reasons. First, the Debtor's motion asks the Court to order a creditor to do nothing more than that which the law already requires it to do. In other words, the Debtor is asking the Court for what should in almost all cases be a wholly superfluous order. It is expected that creditors will promptly comply with the automatic stay as soon as they receive knowledge of a bankruptcy filing. Second, it undermines the efficacy of the automatic stay to file such motions in a routine, knee-jerk, fashion. The operation of the automatic stay

is both broad and powerful. In the vast majority of cases there should be no dispute as to its application. When there is no dispute as to the proper application of the automatic stay, all involved parties should take the necessary action without first seeking the intervention of the bankruptcy court. The power and the efficacy of the automatic stay is undermined when routine and unnecessary motions such as this are made. Third, motions such as this waste scarce judicial resources. Over 7,000 cases were filed in this District alone last year. Many of the debtors who file bankruptcy petitions have had collection suits and garnishment proceedings brought against them. Upon receipt of notice of a bankruptcy filing, creditors should voluntarily and immediately cease all collection efforts and do what is necessary to restore the debtor to the status quo. For example, wages garnished after the date of the filing of a bankruptcy petition should be promptly returned to the debtor without the necessity of a court order. Fourth, motions to release garnishments such as this, when filed on a routine basis, may create a false impression among creditors and employers as to the scope and operation of the automatic stay. Such motions may give the incorrect impression that a creditor is free to continue to violate the automatic stay until such time as a bankruptcy court enters an order specifically directed to the conduct in question. Creditors who take such a position in the future will be subject to sanctions. As the cases cited above make clear, creditors who do not voluntarily take action to comply with the automatic stay may, as a result, pay attorney's fees and damages.

 When a garnishment proceeding is pending at the time a bankruptcy petition is filed, the debtor or his counsel should make a reasonable attempt to communicate with the creditor by giving notice of the bankruptcy filing and requesting that action be taken to release the garnishment. The Notice of Commencement of Case which is sent out by the Court is sufficient to do this, however, the delay involved may make it advisable that debtor's counsel make direct contact on his own. While the specific means of such a communication may vary depending upon the facts of the individual case, a faxed letter with a file-stamped copy of the petition and a copy of the offending process should, in almost any situation, be sufficient to put a creditor on notice that action must be taken to release the garnishment. In the event that a creditor does not take the necessary action, within a reasonable period of time, the debtor may move the Bankruptcy Court for an appropriate order seeking damages, attorney's fees and, if appropriate. punitive damages. Any such motion should set out with particularity the actions taken by the debtor, or his counsel, and document the results. For example, a copy of a pay stub reflecting a deduction for a wage garnishment following an appropriate letter sent by debtor's counsel giving notice of a bankruptcy filing would be powerful evidence that a creditor has willfully violated the automatic stay.

The undersigned is aware that this is a departure from a practice which has been in existence in this District for many years. The case load in this Court has multiplied in recent years, making the issuance of individual orders releasing garnishment increasingly burdensome upon the Court. Moreover, the Bankruptcy Code has now been in effect for over twenty years and it is both unnecessary as well as inefficient to follow what was undoubtedly the practice under the Bankruptcy Act of 1898. As the cases cited above make clear, it simply is not necessary to obtain an individual bankruptcy court order to release each garnishment for each debtor. Creditors, or their lawyers, commit willful violations of the automatic stay when they fail to promptly release a garnishment and may be sanctioned as the equities of each individual case may dictate. For these reasons, the Debtor's Motion to Release Garnishment is DENIED, without prejudice. In the event the creditor fails to heed the automatic stay, the

Debtor may file a motion for sanctions and attorney's fees.

## B. MOTION TO DEFER CHAPTER 13 PLAN PAYMENTS

 A Debtor is required to begin making payments on his proposed plan within 30 days of the date the plan is filed. 11 U.S.C. § 1326(a). The Debtor here seeks an extension of time to begin making payments due to the pending garnishment. The Debtor's motion does not actually allege that any amounts have been withheld from the Debtor's wages, only that the process has been issued. In addition, he did not submit any documentary proof in support of his motion. Specifically, the Debtor did not submit copies of any garnishment process or a pay stub reflecting the fact that any amounts have, in fact, been withheld from his wages. If any amounts have, in fact, been withheld from the Debtor's wages, any delay in obtaining a release of the garnishment is solely attributable to the Debtor.

If the Court were to grant the Debtor's motion to delay payments under the Chapter 13 Plan, it would reward the Debtor for his lack of diligence and undercut the Bankruptcy Code's policy that Chapter 13 payments begin promptly. The Debtor should have properly scheduled the State of Alabama in the Schedules and the Statement of Financial Affairs and should have promptly requested that the State release its garnishment upon his wages. By acting in such a fashion, the Debtor is unnecessarily delaying proceedings in this Chapter 13 case.

 If the Debtor follows the procedures recommended by the Court, it is anticipated that the creditor will voluntarily comply with the requirements of the automatic stay and refund to the Debtor any amounts seized after the date of the petition. Once this happens, the Debtor will have funds with which to make his Chapter 13 plan payments and no need to further delay. On the other hand, in the event the creditor does not comply, the debtor should bring an appropriate motion to enforce the provisions of the automatic stay. If such a motion is diligently prosecuted by the debtor, it is anticipated that the Chapter 13 Trustee would not bring a motion to dismiss for the failure to make plan payments. A motion to defer Chapter 13 payments should rarely, if ever, be made necessary as a result of post bankruptcy petition garnishment proceedings in violation of the automatic stay. To put the matter differently, the remedy for the violation of the automatic stay should be a motion for sanctions pursuant to 11 U.S.C. § 362(h) and not a motion to defer making Chapter 13 plan payments.

## C. RECOMMENDED PROCEDURES

This Court will summarize the preferred procedures to be followed in instances such as this:

 1. The debtor and his counsel shall make sure that all Schedules and Statements filed with the court are complete and accurate. All creditors should be listed on the Schedules and in the mailing matrix. Garnishment proceedings should be described with specificity in the answer to Question No. 4b in the Statement of Financial Affairs.

 2. The debtor or his counsel shall make reasonable efforts to communicate with a creditor, or creditor's counsel, giving notice of the filing of a bankruptcy petition. The communication shall provide sufficient detail to put the creditor on notice that it is in violation of the automatic stay. Such detail would be the style of the bankruptcy case including the name of the Court, the name of the debtor, date of filing, case number as well as a description or copies of the process which is in violation of the automatic stay.

 3. The creditor, or its counsel, is under a duty to promptly investigate the debtor's claim and take all action necessary to release any garnishment which violates the automatic stay. Counsel for both

the debtor and creditor shall cooperate in a spirit of professionalism expected of counsel in this District to insure that the automatic stay is not violated and that inadvertent violations are remedied promptly with a minimum of expense and delay. It is expected that counsel for both parties will communicate with employers and personnel in the court which issued the offending process.[4]

■ 4. In the event a creditor finds that it has inadvertently violated the automatic stay, it shall take all necessary steps to restore the debtor to the position he would have been in had the automatic stay been properly observed. For example, wages seized from a debtor after the date the petition should be promptly restored without waiting for an order from the bankruptcy court. The failure to timely correct an inadvertent violation of the automatic stay is as sanctionable as a willful violation.

■ 5. Debtors should not file motions with the court to enforce the automatic stay unless they have first made a reasonable attempt to communicate with the creditor to resolve the matter. Motions to enforce the automatic stay should document counsel's efforts to resolve the matter made prior to the filing of the motion. In the event sanctions are awarded, time reasonably spent by debtor's counsel on out of court efforts to resolve such matters will be considered to be compensable.[5]

ORDERED, that Debtor's Motion for Release of Garnishment and Motion to Extend Time to Begin Chapter 13 Payments are both DENIED.

4. While the Bankruptcy Code does not require that a Suggestion of Bankruptcy be filed with the court issuing garnishment process, it is a good practice and would be excellent evidence in the event a motion for sanctions were later filed.

5. A Bankruptcy Court in Ohio suggested that between one and one and one-half hours

ORDERED, that the Debtor shall do the following within 15 days of the date of this order: (1) amend his Statement of Financial Affairs to properly report the garnishment proceeding; (2) serve copies of all amended schedules and petitions on all affected entities and file a certification to that effect (*See* FED.R.BANKR.P. 1009(a)); (3) file copies of all garnishment process directed against the Debtor's wages which were in effect at any time after the date of the petition in this case together with copies of the Debtor's pay stubs for any period ending on or after the date of the petition in this case.

would usually be considered reasonable. *In re Roush,* 88 B.R. 163, 165 (Bankr.S.D.Ohio 1988); *see also In re Newell,* 117 B.R. 323, 325 (Bankr.S.D.Ohio 1990) (procedures such as this are not mandated by the Bankruptcy Code, they are an economical and common sense means to deal with a common problem).